NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0518n.06

No. 14-1116

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 22, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MARCUS STOKES, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: SILER, COOK, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Marcus Danquel Stokes (Stokes) appeals his 72-month sentence for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), arguing that the district court erred in applying the United States Sentencing Guidelines (Guidelines or U.S.S.G.) two-level enhancement for possession of a stolen firearm (§ 2K2.1(b)(4)(A)). We **AFFIRM**.

**I.**

When Grand Rapids, Michigan, police officers responded to a report of alleged drug activity on the 1100 block of Logan Street in Grand Rapids, they observed approximately five men, including Stokes. As the officers approached, the men fled on foot, and the officers chased them around the west side of 1138 Logan Street toward a fence at the back of the property. Three officers observed Stokes break off from the group, reach into the waistband of his pants to retrieve something, and discard it into a small white trashcan. An officer then ordered Stokes to get down on the ground and Stokes complied. Stokes was arrested and searched, and the officers

found and seized .87 grams of crack cocaine, a cell phone, and $433.00 in cash. After he was read his Miranda rights, Stokes agreed to speak with police and explained that the crack cocaine was for personal use. Officers then searched the white trashcan and found a loaded Taurus .380 caliber semiautomatic pistol. Stokes was again read his Miranda rights and again agreed to speak with police, but claimed no knowledge of the firearm. At the time of Stokes's arrest, the gun was not reported stolen. However, on June 21, 2013, Jacob VanDyke reported to Michigan State Police that a gun with a serial number matching the one found in the trashcan had been stolen from his garage sometime during the preceding two or three weeks.

A grand jury returned an indictment charging Stokes with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Stokes pleaded guilty, acknowledging that he had two prior felony convictions and that he understood that he was not permitted to carry a firearm. He explained that this was why he ran from police and threw the gun in the trashcan.

Prior to sentencing, the probation office submitted a Presentence Investigation Report (PSR) that calculated a Guidelines sentencing range of 70 to 87 months as follows: a base offense level of 20; a two-level increase because the firearm was stolen (U.S.S.G. § 2K2.1(b)(4)(A)); a four-level increase because Stokes possessed the firearm in connection with another felony offense, the sale of crack cocaine (§ 2K2.1(b)(6)(B)); a three-level decrease for acceptance of responsibility; and a criminal history category of IV. Stokes objected to the application of both enhancements, arguing in his sentencing memorandum that the two-level enhancement for possession of a stolen firearm was inappropriate because the gun was not reported stolen until after his arrest.

At the sentencing hearing, Stokes withdrew his objection to the four-level increase for possessing the firearm in connection with the commission of another felony, but maintained his objection to the two-level enhancement for possession of a stolen firearm, arguing that he could not have known the gun was stolen if it was not reported stolen until a week after his arrest. The government conceded that there was no evidence that Stokes stole the gun.

The district court rejected Stokes's argument and applied the two-level enhancement:

> the appropriate analysis is the *Thomas* case, and I realize it's a Second Circuit case, but I'm persuaded by it, that this enhancement is going to strict liability and whether or not your client knew it was stolen is not relevant to the analysis, and because larceny is a crime against possession, it's clear to me that somebody had committed the crime prior to the date that your client came in possession of that weapon.

After acknowledging the discretionary nature of the Guidelines, considering Stokes's request for a downward variance, and analyzing the 18 U.S.C. § 3553(a) factors, the court sentenced Stokes at the low end of the Guidelines range to 72 months' imprisonment.

## II.

## A.

On appeal, Stokes challenges only the application of the two-level increase for possession of a stolen firearm, arguing that the district court erred by applying the enhancement on a strict liability basis because recent Supreme Court precedent dictates that Guidelines provisions that are not based on empirical evidence and national experience, which he argues this enhancement was not, are entitled to little deference. Stokes also asserts that possession of a stolen firearm is a separate offense that the government must prove beyond a reasonable doubt.

This court generally reviews a district court's findings of fact for clear error and its application of the Guidelines de novo. *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007). However, the Government maintains that Stokes's arguments are entitled only to plain-error

review because he did not raise them below. The government is correct; Stokes's arguments on appeal are different from those he made before the district court. As a practical matter, however, Stokes's claims fail under any standard.

**B.**

**1.**

Stokes's argument is not addressed to the proper interpretation of U.S.S.G. § 2K2.1(b)(4)(A). The intended operation of this enhancement is made clear in the commentary, which states "Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S.S.G. § 2K2.1 cmt. n.8(B). Instead, Stokes concedes that this court has repeatedly upheld the application of U.S.S.G. § 2K2.1(b)(4)(A) without a mens rea requirement, *see, e.g., United States v. Murphy*, 96 F.3d 846, 849 (6th Cir. 1996), but maintains that intervening Supreme Court decisions justify revisiting this precedent. In particular, Stokes points out that in *Gall v. United States*, 552 U.S. 38, 50 (2007), the Supreme Court held that a trial court "may not presume that the Guidelines range is reasonable . . . [but] must make an individualized assessment based on the facts presented," and determined that a sentencing judge must consider the factors enumerated in 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient, but not greater than necessary." *Id.* at 44 (internal citations omitted). Stokes argues that this discretion requires district courts to scrutinize the "once-inscrutable Guidelines." Based on *Kimbrough v. United States*, 522 U.S. 85, 109 (2007), Stokes further contends that district courts can and should use their discretion to afford little weight to Guidelines determinations that are not based on "empirical data and national experience," because such Guidelines depart from the Sentencing Commission's institutional function. Stokes

maintains that without a mens rea, the stolen-gun enhancement lacks empirical grounding and a reasonable policy rationale.

The district court rejected these arguments, citing *United States v. Thomas*, 628 F.3d 64, 69 (2d Cir. 2010), in which the Second Circuit upheld the application of § 2K2.1(b)(4)(A) without a mens rea, finding there to be rational policy reasons for the enhancement.

> The government reasonably may determine that stolen firearms often end up in the hands of criminals and that the government has a legitimate interest in punishing possession of a stolen firearm and placing the burden upon one who receives a firearm to ensure that the possession is lawful . . . . [T]he stolen firearm enhancement does not violate the due process clause because the enhancement does not alter the statutory maximum penalty, negate the presumption of innocence or alter the burden of proof for the underlying offense, or create a separate offense calling for a separate penalty.

*Thomas*, 628 F.3d at 68 (citation and internal quotation marks omitted). We find no error, plain or otherwise.

**2.**

In *Kimbrough*, the Supreme Court held that district courts may conclude that the Guidelines' crack/powder cocaine disparity results in sentences greater than necessary, despite Congress's rejection of the proposed one-to-one ratio for crack-cocaine versus powder-cocaine sentencing Guidelines. The Court recognized that the Sentencing Commission "fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough*, 552 U.S. at 109 (internal quotation marks omitted). The Court explained, however, that the crack-cocaine Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses . . . the Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of empirical data and national experience." *Id*. (internal quotation marks omitted).

The Court noted as well that "the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, *i.e.,* sentences for crack cocaine offenses greater than necessary in light of the purposes of sentencing set forth in § 3553(a)." *Id*. at 110 (internal quotation marks omitted).

Assuming arguendo that the stolen gun enhancement is analogous to the crack/powder cocaine discrepancy,[1] *Kimbrough* does not require district courts to determine the empirical basis of a Guideline before application; rather, it empowers district courts to vary from the Guidelines with "reasoned appraisal" supported by 18 U.S.C. § 3553(a) factors. *Kimbrough*, 552 U.S. at 111. Further, we have made clear that "a district court may vary from the Guidelines based on a policy disagreement, but it is not required to do so." *United States v. Ziska*, 602 F. App'x 284, 290 (6th Cir. 2015) (citing *United States v. Klepper*, 520 F. App'x 392, 393 (6th Cir. 2013)).

The only case Stokes cites in support of his argument is *United States v. Handy*, 570 F. Supp. 2d 437, 480 (E.D.N.Y. 2008), in which the district court found the application of § 2K2.1(b)(4)(A) improper because there was no proof that Handy knew that the gun was stolen. However, in *United States v. Black*, 386 F. App'x 238, 241 (3d Cir. 2010), the Third Circuit did "not find *Handy* to be persuasive," and the Second Circuit rejected arguments premised on *Handy* in *Thomas*, 628 F.3d at 69. This court too has continued to apply the § 2K2.1(b)(4)(A) enhancement without a mens rea requirement post-*Kimbrough*, albeit in unpublished cases. In *United States v. Moore*, 372 F. App'x 576, 578 (6th Cir. 2010), we rejected arguments almost

---

[1] As the Third Circuit observed in *United States v. Holcomb*, 390 F. App'x 117 (3d Cir. 2010), *Kimbrough* is distinguishable because there the Court "reinstated a below-the-Guidelines sentence for crack cocaine possession in light of the particular circumstances of Kimbrough's case and the Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with 3553(a). By contrast, the Sentencing Commission has expressed no such concern for § 2K2.1(b)(4)(A)." *Id*. at 121 (citation and internal quotation marks omitted).

identical to those made here. And in *United States v. Cole*, 448 F. App'x 549, 552 (6th Cir. 2011), we upheld the application of the stolen-firearm enhancement after finding the district court's rationale, "that if one is a convicted felon who is prohibited from possessing a firearm, that if that person does possess it he or she takes the risk or does run the risk of the fact that the firearm was, in fact, stolen," was consistent with Sixth Circuit precedent. The reasoning of these cases is sound.

**3.**

Stokes next argues that the district court "provided only a cursory response to [his] objection." However, the record reflects that the court engaged directly with Stokes's arguments, and rejected them because it was ultimately persuaded by the reasoning of *Thomas*, *supra*. Further, before imposing Stokes's 72-month sentence, the court acknowledged the discretionary nature of the Guidelines and analyzed the 18 U.S.C. § 3553(a) factors.

**C.**

Finally, Stokes argues that the stolen-firearm enhancement is an independent criminal offense pursuant to 18 U.S.C. § 922(j), and therefore the government must prove beyond a reasonable doubt that he knew the gun he possessed was stolen. However, the government correctly observes that this argument fails because Stokes conflates § 922(j), which makes it a crime for any person to possess a firearm the person knows is stolen, with § 2K2.1(b)(4)(A), which enhances the penalty for the separate crime of felon in possession of a firearm, which has its own mens rea requirement,[2] when that firearm is stolen.

---

[2] "The offense of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) is comprised of three elements: (1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm

## III.

For these reasons, we **AFFIRM**.

---

traveled in or affected interstate commerce." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (citing *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir.2003)).