NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0459n.06

Case No. 24-1624

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Oct 10, 2025 |
| | ) | KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| DARELL WILLIAM CRAFT, JR., | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

**MATHIS, Circuit Judge.** A grand jury charged Darell Craft with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Craft moved to dismiss the indictment, contending that § 922(g)(1) violated the Second Amendment. The district court denied his motion, and Craft pleaded guilty. The district court sentenced him to 88 months' imprisonment.

On appeal, Craft argues that the district court erred in denying his motion to dismiss. He also challenges his sentence as procedurally and substantively unreasonable. Discerning no error, we affirm.

**I.**

On July 1, 2023, police officers with the Benton Harbor Department of Public Safety observed a speeding vehicle. They learned that the vehicle was uninsured and registered to S.P., who had an active warrant. After the vehicle stopped at a nearby gas station, officers approached. Craft occupied the driver's seat, and S.P. sat in the front passenger seat. As the officers spoke with

S.P., they smelled alcohol emanating from the vehicle and saw an open, partially consumed liquor bottle in the center console.

After the officers told Craft and S.P. that they would be searching the vehicle, Craft informed them that a gun was under the front passenger seat. During the search, officers located a loaded handgun under the front passenger seat. Officers later learned that the gun had been reported stolen and had been linked to three shootings occurring earlier that year.

A grand jury indicted Craft with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Craft moved to dismiss the indictment, arguing that § 922(g)(1) violated the Second Amendment. The district court denied the motion to dismiss. Following the district court's denial of his motion, Craft entered a guilty plea.

The case proceeded to sentencing. At the sentencing hearing, the district court determined that Craft's advisory Sentencing Guidelines range was 63 to 78 months. His criminal history includes felony and misdemeanor convictions, including convictions for assault and battery, aggravated assault, second-degree home invasion, and third-degree fleeing and eluding a police officer. At the time of Craft's § 922(g)(1) violation, he was on state probation for multiple convictions of attempted resisting and obstructing a police officer. The instant offense occurred about four months after Craft was placed on state probation.

After hearing arguments from the parties, the district court imposed a sentence of 88 months' imprisonment, 10 months above the top of the advisory Guidelines range. After the district court invited objections to the sentence, Craft's counsel objected to the upward variance, calling it substantively unreasonable. The district court noted the objection for the record. This appeal followed.

## II.

On appeal, Craft challenges the constitutionality of § 922(g)(1) and the reasonableness of his sentence. We address these arguments in turn.

## A.

Craft contends that § 922(g)(1) violates the Second Amendment on its face and as applied to him. We review this constitutional challenge de novo. *United States v. Gailes*, 118 F.4th 822, 824 (6th Cir. 2024).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This amendment protects "an individual right to keep and bear arms for self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022) (citation modified). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Thus, regulations disarming persons protected by the Second Amendment must be "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "When a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (citation modified). "The law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin." *Id.* (citation modified).

Section 922(g)(1), commonly referred to as the felon-in-possession statute, is the gun regulation at issue. It prohibits "any person" who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing "any firearm or ammunition." 18 U.S.C. § 922(g)(1).

After *Bruen* and *Rahimi*, we reevaluated the constitutionality of § 922(g)(1) in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). There, we determined that felons are among "the people" protected by the Second Amendment, but that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Williams*, 113 F.4th at 649, 657.

*Facial challenge.* We can quickly dispose of Craft's facial challenge to § 922(g)(1). In *Williams*, we held "that § 922(g)(1) is constitutional on its face." *Id.* at 662. So we turn next to Craft's as-applied challenge.

*As-applied challenge.* For as-applied challenges, § 922(g)(1) is constitutional "as applied to dangerous people." *Id.* at 662–63. A person challenging the constitutionality of § 922(g)(1) bears the burden of showing that he is not dangerous. *Id.* at 657. "In determining whether an individual has met his burden," courts "must focus on each individual's specific characteristics." *Id.* To that end, courts must consider a defendant's "entire criminal record—not just the predicate offense for purposes of § 922(g)(1)." *Id.* at 657–58.

Craft argues that he is not a dangerous person because a 2018 shooting left him partially paralyzed and confined to a wheelchair.[1] But Craft's criminal record shows otherwise.

In 2013, Craft was convicted of second-degree home invasion under Michigan law. "[S]econd-degree home invasion under Michigan law is the equivalent of . . . burglary of a dwelling." *United States v. Gibbs*, 626 F.3d 344, 353 (6th Cir. 2010). "[B]urglary is dangerous because it 'creates the possibility of a violent confrontation between the offender and occupant.'"

---

[1] Craft argues that we should remand to the district court for a hearing to allow him to show that he is not dangerous because the district court denied his motion to dismiss before we decided *Williams*. But we have said that remand is unnecessary when the record shows that the defendant is dangerous. *See United States v. White*, No. 24-2064, 2025 WL 2060869, at *3 (6th Cir. July 23, 2025) (collecting cases).

*Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)). Craft's conviction for second-degree home invasion makes it "very difficult" for Craft to "show[] he is not dangerous." *Id.* at 663.

Three years later, Craft was convicted of aggravated assault under Michigan law. Michigan aggravated assault is a "dangerous crime" because it requires a defendant to cause "an injury so 'serious' that the victim either needed 'immediate medical treatment' or suffered from 'disfigurement, impairment of health, or impairment of a part of the body.'" *United States v. Robinson*, No. 24-1469, 2025 WL 2105111, at *1 (6th Cir. July 28, 2025) (quoting *People v. Norris*, 600 N.W.2d 658, 661 n.3 (Mich. Ct. App. 1999)).

In 2023, after Craft became wheelchair bound, he was convicted of three counts of attempted resisting and obstructing a police officer. Officers were dispatched after reports of Craft "doing donuts" in the street and then speeding away. R. 46, PageID 212. When officers stopped Craft, he refused to exit his vehicle. The officers had to physically remove him from the vehicle and place him in his wheelchair. He also physically resisted being restrained. An officer stunned Craft with a taser, but he continued to resist. At one point, Craft removed the taser from the officer's hand.

Craft was on probation for the 2023 convictions when he possessed a loaded firearm, leading to the felon-in-possession conviction here. *See United States v. Poe*, No. 24-6014, 2025 WL 1342340, at *3 (6th Cir. May 8, 2025) ("A loaded gun is inherently dangerous."); *cf. United States v. Goins*, 118 F.4th 794, 804–05 (6th Cir. 2024). He also had three other prior felony convictions.

All in all, Craft's criminal history shows that he is dangerous, and he has failed to meet his burden to prove otherwise. Craft had convictions for second-degree home invasion and aggravated

assault prior to his paralysis. And his convictions for conduct occurring after his paralysis show that his disability has not eliminated his dangerousness. Section 922(g)(1) is thus constitutional as applied to him.

**B.**

Craft also challenges the reasonableness of his sentence. We review sentences for both procedural and substantive unreasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007).

**1.**

We generally review procedural-reasonableness challenges under the abuse-of-discretion standard. *Id.* But when a defendant fails to raise procedural sentencing objections below, we review for plain error. *United States v. Mitchell*, 107 F.4th 534, 540 (6th Cir. 2024).

Craft made no argument about the procedural aspects of his sentence in the district court, nor did he identify a procedural defect when the court allowed him to raise objections. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). When asked the *Bostic* question at sentencing, Craft's counsel replied, "the sentence, in particular the upward variance, is substantively unreasonable. I also think the refusal to either vary or depart downward as identified in the presentence report based on Mr. Craft's disability is substantively unreasonable." R. 70, PageID. 396. When "a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review," plain-error review applies. *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). To show that a sentence is procedurally unreasonable under plain-error review, a defendant must show that: (1) there was an error, (2) the error was "plain," (3) the error affected "substantial rights," and (4) "the error had a serious effect on the fairness, integrity or

public reputation of judicial proceedings." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (citation modified).

In assessing procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51.

Craft argues that the district court procedurally erred because it: (1) erroneously believed that Craft was on felony probation at the time of the instant offense; and (2) did not explain why an above-Guidelines sentence was warranted.

*Misdemeanor v. felony probation.* During the sentencing hearing, the district court described Craft's most recent conviction of attempted resisting and obstructing a police officer as a felony conviction. The court indicated that Craft was on felony probation at the time he was caught with a firearm. But as both parties agree, attempted resisting and obstructing a police officer is a misdemeanor under Michigan law. Mich. Comp. Laws § 750.92(3). So the district court's description of Craft being on felony probation was clear error.

Craft cannot, however, show that the district court's error affected his substantial rights. For a sentencing error to affect a defendant's substantial rights, "there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer*, 593 U.S. at 507–08 (citation modified).

The district court's inaccurate description of Craft's most recent state offense as a felony was part of a broader discussion about Craft's criminal history. During the sentencing hearing, the district court emphasized the need to deter Craft and protect the public. It observed that Craft

had multiple felony convictions and that he "continually commits violations of the criminal law, whether it be on the state or federal level, and now finds himself in front of a federal judge on a very serious crime." R. 70, PageID 392. And although the district court erroneously characterized Craft's most recent state offense as a felony, the court's focus was on the timing of the instant federal offense—"a scant four months" into his probationary term. *Id*. at 393. That Craft was on misdemeanor probation rather than felony probation did not impact the district court's rationale. The point was that a significant sentence was needed because, among other reasons, Craft disregarded the terms of his state probation by possessing a loaded weapon. Thus, Craft's challenge fails under plain-error review.

*Adequacy of explanation*. A district court must state "the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). But "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). The court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* But it "need not explicitly consider each of the § 3553(a) factors; a sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion." *United States v. Dexta*, 470 F.3d 612, 614–15 (6th Cir. 2006). When plain-error review applies, we may reverse only if the district court's explanation "was so deficient as to qualify as obvious error." *United States v. O'Lear*, 90 F.4th 519, 541 (6th Cir. 2024).

The district court adequately explained its reasons for imposing an 88-month sentence. The district court noted that it considered the Guidelines "as an initial benchmark" but recognized that it must make an "individualized assessment" based on the record. R. 70, PageID 390. The

court then focused on Craft's criminal history, observing that Craft has "continually" violated the law and was in court for "a very serious federal felony." *Id*. at 392. The court also emphasized the need to deter Craft and noted that it viewed him as "a major risk to the law-abiding public." *Id*. at 393. This explanation suffices under plain-error review. *See United States v. Nunley*, 29 F.4th 824, 833 (6th Cir. 2022) (finding no plain error in the district court's explanation of the defendant's sentence because the court described the details of the offense, summarized the defendant's criminal history and "lack of respect for the law," and discussed the need to protect the public).

**2.**

Craft's substantive-reasonableness challenge fares no better. "The essence of a substantive-reasonableness claim is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (citation modified). Substantive reasonableness concerns "whether the sentencing court gave reasonable *weight* to each" of the relevant § 3553(a) factors. *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019). A "district court's decision to assign more or less weight to a given factor is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id.* (citation omitted).

We "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. "[W]e must give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *United States v. Dunnican*, 961 F.3d 859, 880 (6th Cir. 2020) (quoting *Gall*, 552 U.S. at 51). Accordingly, our task "is not to pick the sentence that we would prefer . . . but only to ensure that the sentence

chosen by the district court fell within its broad range of reasoned discretion." *United States v. Lynde*, 926 F.3d 275, 283 (6th Cir. 2019).

"Although a sentence that falls within the Guidelines range warrants a presumption of reasonableness in this circuit, there is no presumption against a sentence that falls outside of this range." *Tristan-Madrigal*, 601 F.3d at 633 (quotation omitted). "The greater the variance, the more compelling the justification must be." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (citation omitted). To that end, the district court should explain "how the present case is different from the typical or mine-run case that occupies the heartland to which the [Sentencing] Commission intends individual Guidelines to apply." *Id.* (citation modified).

Recall that the district court sentenced Craft to 88 months' imprisonment, 10 months above the top of his 63-to-78-month Guidelines range. Craft argues that his sentence is too long because "there is no relationship" between his felon-in-possession conviction and his previous convictions, which did not involve firearms. D. 18 at p.9. And he contends that the district court failed to explain why a within-Guidelines sentence "nearly 3 times longer than his longest state court sentence was insufficient to accomplish the goals of sentencing." *Id.* at 10.

Craft's arguments fail. Before imposing the sentence, the district court described the Guidelines as an "initial benchmark or starting point." R. 70, PageID 390. The court then addressed the relevant § 3553(a) factors, including the nature and circumstances of the offense, the characteristics and history of the defendant, protecting the public, and affording adequate deterrence to criminal conduct.

During the hearing, the district court highlighted that Craft had committed a "very serious crime," finding it particularly concerning that Craft committed the instant offense "a scant four months plus from the original sentence from a state judge who gave him one year probation." *Id.*

at 393. The district court's discussion of Craft's criminal history centered on considerations that Craft's Guidelines range does not capture—that Craft "continually" violates the law and has successfully completed probation or parole only once. *Id.* at 392. Craft's counsel acknowledged that Craft had not had "a good history on supervision." *Id.* at 384.

We have upheld above-Guidelines sentences based on a defendant's criminal history when there is a "relationship between the instant offense and the defendant's prior offenses." *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020); *see Dunnican*, 961 F.3d at 881. The district court acknowledged that relationship. It thus did not give undue weight to either Craft's history and characteristics or the seriousness of the present offense.

Craft also argues that his sentence is substantively unreasonable because the district court's above-Guidelines sentence was nearly three times longer than Craft's longest state court sentence. But Craft's prior, lesser sentences do not make the district court's above-Guidelines sentence substantively unreasonable. *See United States v. Israel*, 662 F. App'x 382, 391 (6th Cir. 2016) (noting that the district court may consider a defendant's previous lenient sentence in selecting the defendant's sentence). Instead, Craft "ha[d] not been deterred by prior sentences and [had] not learned respect for the law." *United States v. Small*, 988 F.3d 241, 260 (6th Cir. 2021). So it was reasonable for the district court to impose an above-Guidelines sentence.

The important point is that the district court provided sufficient justification for the upward variance. *See Perez-Rodriguez*, 960 F.3d at 754. The district court varied 13% above the top of the Guidelines range. *Compare Mitchell*, 107 F.4th at 546 (describing an upward variance of 24% as "modest" and substantively reasonable considering the defendant's circumstances), *with United States v. Brown*, 828 F. App'x 256, 259 (6th Cir. 2020) (holding that the district court acted unreasonably when it doubled the defendant's sentence from the high end of the Guidelines range

based on the defendant's "extensive criminal history").  Because the district court grounded this modest upward variance in the pertinent § 3553(a) factors and other considerations not accounted for in the Guidelines, we are satisfied that it had a "compelling justification" for the upward variance.  *Perez-Rodriguez*, 960 F.3d at 756.

In the end, Craft's argument boils down to a disagreement with how the district court balanced the sentencing factors, which exceeds the scope of our review.  *See United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006).  But as long as a district court examines the appropriate § 3553(a) factors, it "may place great weight on one factor if such weight is warranted under the facts of the case."  *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) (citation omitted).

## III.

For the reasons above, we **AFFIRM** the district court's judgment.